**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
───────────────────────────────

UNITED STATES OF AMERICA,

v.                                                                    10-cr-219-WMS-HKS

TONAWANDA COKE CORPORATION,
*et al.,*

Defendants.

───────────────────────────────

### DEFENDANTS' JOINT EXPERT WITNESS DISCLOSURE

Undersigned counsel for Defendants Tonawanda Coke Corporation ("Tonawanda Coke")

and Mark L. Kamholz hereby provide their joint expert witness disclosure pursuant to Rule

16(b)(1)(C) of the Federal Rules of Criminal Procedure.

### EXPERT WITNESS DISCLOSURE

Pursuant to Rule 702 of the Federal Rules of Evidence, the following witnesses will be

proffered by the Defendants as experts to offer opinion testimony in the areas indicated in their

respective disclosures.

A.    **Stephen A. Johnson**

Mr. Johnson's Curriculum Vitae is attached hereto as Attachment A.  As indicated in his

Curriculum Vitae, he received a B.S. degree in Civil Engineering and an M.S. degree in

Environmental Engineering and Science from Stanford University.  Mr. Johnson previously

served as an Assistant Director of the Arizona Department of Environmental Quality, where he

headed the Office of Waste Programs and was responsible for managing the state's waste-related

programs, including solid waste, hazardous waste, site remediation and other programs.  He also

served as the Chief of the Resource Conservation and Recovery Act ("RCRA") Enforcement

Section for Region IX[1] of the United States Environmental Protection Agency ("EPA"), where

he was responsible for implementing the RCRA enforcement program for all of Region IX and

leading a staff that (a) inspected RCRA-regulated (and potentially RCRA-regulated) facilities

and (b) developed enforcement actions against noncompliant facilities, among other duties.

Before then Mr. Johnson served as an EPA Region IX Clean Water Act Inspector and

Compliance Officer and previously was a Remedial Project Manager in Region IX's Superfund

program.   Mr. Johnson has worked as a consultant for over 19 years for large corporations, small

businesses, public agencies, and non-governmental organizations.  Mr. Johnson had authored and

co-authored numerous articles on a range of environmental topics and has testified in court and

in depositions as an expert witness in state and federal courts with respect to a range of

environmental topics.  The cases in which Mr. Johnson has testified as an expert witness either in

court or in depositions during the last four years are listed at pp. 2-4 of his attached Curriculum

Vitae.

Mr. Johnson will be proffered to testify as an expert in the following areas: (1) the

interpretation and application of RCRA regulations, particularly those related to storage,

treatment, abandonment, disposal, and recycling of secondary materials, wastes, and hazardous

wastes, as well as definitions relevant to these concepts; (2) national EPA objectives for and

techniques to achieve regulated community compliance with EPA and state environmental

requirements in general and RCRA requirements in particular; (3) the role of states in fulfilling

important functions of the national RCRA program; (4) the purpose and objectives of the RCRA

inspection and enforcement programs; (5) the training and work of EPA and state inspectors in

general and RCRA inspectors in particular; (6) the interaction between inspected facilities and

---

[1] EPA Region IX consists of California, Arizona, Nevada, Hawaii, the Pacific Islands and 148 Tribes.

regulatory agency inspectors and the former's reliance on representations by the latter; and (7) the work of regulatory agency personnel to address findings of noncompliance in general and to resolve noncompliance issues that arise through errors in permitting processes in particular.

The bases and reasons for Mr. Johnson's opinions in this case are his educational training, his 30 years of work experience with state and federal environmental enforcement agencies, as well as private corporations and public organizations, and his general and site-specific experience relevant to inspection, compliance and enforcement programs in general and RCRA inspection, compliance and enforcement programs in particular.  More specifically, his opinions are based on: his experience as an EPA regional office manager, inspector, enforcement officer, and project manager; his experience as an executive with a state environmental agency responsible for all aspects of hazardous and non-hazardous waste-related programs; and his experience as a private consultant working with public and private corporations, public agencies and non-governmental organizations.  In forming his opinions in this case, Mr. Johnson has reviewed an extensive amount of general regulatory information and case-specific information, including the documents and materials relied upon by the government's RCRA experts.  Mr. Johnson considered and relied upon the following categories of documents in forming his opinions: the relevant statutes, regulations, and legislative histories; EPA preambles to proposed and final regulations; EPA background documents developed to support regulations, guidance documents prepared by EPA and the State of New York or other relevant entities; interpretative memoranda and letters prepared by EPA; training materials prepared by EPA and the State of New York, including various manuals and checklists; policies and procedures established by EPA; information contained in EPA dockets; information available on EPA websites; EPA timelines on state authorization; memoranda and agreements between EPA and the State of New

3

York on RCRA implementation; and public statements of EPA and the State of New York regarding various matters at issue in this case.  A list of the documents, materials, and sources relied upon by Mr. Johnson in forming his opinions in this case is provided in Attachment B.

Mr. Johnson is expected to testify that one of EPA's fundamental policy goals is to promote and ensure compliance with the environmental statutes and regulations.  This policy goal is advanced through the production of educational and other explanatory materials, the issuance of guidance documents, the drafting of interpretative letters and memoranda, all organized in an accessible system, among other resources.

Mr. Johnson is expected to testify about the role that states play in the RCRA program and explain the relationship between EPA and the states' RCRA regulatory programs.  He is expected to explain that EPA assists states in the development of their RCRA program by providing training regarding the RCRA regulations and the performance of RCRA inspections.  EPA "authorizes" states to run their RCRA programs and once authorized, the state program operates in lieu of the federal RCRA program in that state.  The base RCRA program in the State of New York was authorized by EPA in 1986 and additional components of the program have been authorized since that time.  EPA relies on state RCRA inspection and enforcement programs as an important component of the agency's national efforts to ensure that the regulated community complies with RCRA requirements.

Mr. Johnson is expected to testify about the purpose and objectives of RCRA inspections of regulated facilities by inspectors from EPA regional offices and state programs.  He is expected to testify that RCRA inspectors are trained to review and rely upon agency interpretative documents for guidance generally and for communicating to members of the regulated community.  These interpretative documents are also used to evaluate compliance

4

issues that may be open to interpretation or judgment.  Mr. Johnson is expected to testify that

regulated facilities appropriately view EPA and state environmental agency RCRA inspectors as

being well-trained and knowledgeable regarding RCRA regulatory issues and that inspectors are

expected to provide feedback to facilities and field-level compliance assistance.  He is expected

to testify that he has reviewed the RCRA inspection reports for the Tonawanda Coke and, in his

opinion, it was reasonable for the personnel at Tonawanda Coke to rely on the determinations

made by the New York State Department of Environmental Conservation ("NYSDEC") RCRA

inspectors in those inspection reports that the facility was properly recycling the decanter tank tar

sludge in a manner that was in compliance with the RCRA regulations (*i.e.*, that  Tonawanda

Coke recycled the coal tar sludge in a manner that excluded it from regulation under RCRA).

Mr. Johnson is also expected to testify regarding the actions of regulatory agency personnel in

response to findings of noncompliance that stemmed from errors in permitting processes.

Mr. Johnson is expected to testify regarding the standard procedures utilized by a RCRA

inspector to prepare for a site inspection.  He is expected to explain that the inspector would

review the available information about the facility, including reports of prior inspections and

required reports filed by the facility to determine the regulatory status of the facility, and identify

any past compliance issues.  Mr. Johnson is expected to testify that, where necessary, it is also

standard practice for a RCRA inspector to review applicable preambles or interpretative

documents that may address issues related to the facility.  He is expected to testify that a site

inspection is a direct opportunity to identify non-compliance, confirm compliant conditions and

to communicate findings to the facility.  Mr. Johnson is expected to testify that, in order to

perform those functions, a RCRA inspector is trained to inspect RCRA-related hazardous waste

management activities, including the management of any materials that may be excluded or

exempt from RCRA management by regulation.  Based on his review of the RCRA inspection records for the Tonawanda Coke facility, Mr. Johnson is expected to testify that it is his opinion that, for nearly 20 years, the NYSDEC inspectors understood and were satisfied with the manner in which the facility was recycling its hazardous secondary materials, including any RCRA hazardous (listed or characteristic wastes), excluded, and/or exempt wastes.

Mr. Johnson is expected to testify that he has reviewed summaries of witness statements and other materials that discussed the material on the ground adjacent to the two storage tanks that are the subject of Count 17 in the Indictment.  He is expected to explain that he understands that the material was abandoned and therefore disposed by the prior owner of the site prior to the effective date of the RCRA regulations covering this material and thus this material was not subject to RCRA regulations, including RCRA storage and permitting regulations, unless and until Tonawanda Coke "actively managed" the material.  Mr. Johnson is expected to testify that, in his opinion, neither the spreading of coke breeze on the top of the material that was on the ground around the two storage tanks nor the dismantling of the upper portion of one of the storage tanks constituted the "active management" of the previously abandoned material.  He is expected to testify that, in his opinion, the first time the material on the ground adjacent to the two storage tanks was "actively managed" was when a portion of the material was removed for recycling. This removal for recycling did not cause the remaining unexcavated waste to be regulated under RCRA treatment, storage, or disposal regulations.

Mr. Johnson is expected to testify that he has reviewed summaries of witness statements and other materials that discussed the mixing of the material that was removed from one of the two storage tanks for use as an ingredient in the manufacture of coke.  He is expected to testify that, in his opinion, this material, which is the subject of Count 18, was not a solid waste under

6

the RCRA regulations or the process did not fall within the ambit of RCRA because from the

point at which the material was removed from the tank, it was managed as a product-like

material that was not a part of the waste management problem.  Mr. Johnson is expected to

testify that the mixing of this material with the coal constituted the first step of recycling under

the RCRA regulations and was therefore excluded from the RCRA permitting requirements

and/or exempt from RCRA regulation.

Mr. Johnson is expected to testify that neither the mixing of the material which was

removed from the storage tanks with coal on the coal piles (Count 18) nor the mixing of the

decanter tank tar sludge with coal on the coal piles (Count 20) prior to insertion into the coke

ovens for the production of product was a regulated RCRA activity.  When recycled in this

manner, the materials are excluded from the definition of solid waste, the activity is exempt from

RCRA as legitimate recycling , and the activity does not constitute RCRA "land disposal."  He is

expected to testify that the products of the recycling process were also not used in a manner that

constitutes disposal for the purposes of the RCRA regulation.

## B.    Marcia E. Williams

Ms. Williams' Curriculum Vitae is attached hereto as Attachment C.  As indicated in her

Curriculum Vitae, Ms. Williams received a B.S. degree in Math and Physics from Dickinson

College and performed graduate work in Math and Physics at the University of Maryland.  Ms.

Williams was employed by EPA in the agency's headquarters offices for a period of 18 years

during which she served in managerial positions in a number of offices, including the Office of

Solid Waste and the Office of Pesticides and Toxic Substances.  During her last three years with

EPA, she served as the Director of the agency's Office of Solid Waste where she was the

National Program Manager for RCRA and was responsible for overseeing the implementation of

7

the 1976 RCRA statute and the 1984 Hazardous and Solid Wastes Amendments to RCRA. This involved the issuance of over 40 new proposed and final RCRA rules and regulations. After leaving EPA, Ms. Williams co-chaired the Environmental Policy Committee for BFI, the second largest waste management company in the world, and was the Vice President in charge of compliance for BFI's hazardous waste subsidiary. She also served on the Board of Directors for Safety-Kleen, a major recycling company, where she provided oversight on corporate governance issues and chaired the environmental committee for the Board. Since then, Ms. Williams has served as a consultant and testifying expert for governments and corporations in a number of environmental areas, including solid and hazardous waste regulations, policies, and practices. Ms. Williams has authored and co-authored a number of articles on environmental topics, including RCRA and solid waste management. She has testified as an expert either in deposition or trial in dozens of cases in state and federal courts and has testified before Congress on hazardous waste issues both during and after her tenure at EPA. A list of the cases in which she has testified as an expert either in court or in depositions is provided in her Presentation of Qualifications at pp. 8-11.

Ms. Williams will be proffered to testify as an expert in the following areas: (1) the federal regulatory development process including the processes used to develop RCRA regulations; (2) the interface between RCRA and other key federal environmental programs; (3) the history and evolution of the federal RCRA program; (4) the contexts for the development of important RCRA concepts, including how RCRA regulates recycling, the definition of hazardous waste, the definition of solid waste, the RCRA waste characterization requirements, and related definitional concepts; (5) the application of RCRA regulations, including permitting regulations, to generators, transporters, and RCRA treatment, storage and disposal facilities; (6) the processes

used and decisions made by EPA to authorize states to implement the RCRA program and the

relative roles played by EPA headquarters, EPA regions, and state regulators; (7) the

development of interpretive letters, memoranda and guidance documents that facilitate RCRA

interpretation and implementation by regulated parties, as well as personnel in EPA regional

offices and states responsible for implementing the RCRA program; and (8) the interpretation

and application of RCRA regulations, particularly those related to storage, treatment,

abandonment, disposal, and recycling of secondary materials, wastes, and hazardous wastes, as

well as definitions relevant to these concepts.

   The bases and reasons for Ms. Williams' opinions are her educational training, her more

than 40 years of experience related to RCRA and its regulations, including her tenure as National

Program Manager for the RCRA program and her site-specific and general knowledge on the

application of RCRA and its regulations to the management of solid and hazardous wastes in a

wide variety of government, manufacturing, and industrial settings.   In forming her opinions in

this case, Ms. Williams has reviewed an extensive amount of general regulatory information and

case-specific information, including the documents and materials relied upon by the

government's RCRA experts.  Ms. Williams considered and relied upon the following categories

of documents in forming her opinions: the relevant statutes, regulations, and legislative histories;

EPA preambles to proposed and final regulations; EPA background documents developed to

support regulations, EPA guidance documents prepared by EPA and the State of New York or

other relevant entities; interpretative memoranda and letters prepared by EPA; training materials

prepared by EPA and the State of New York, including various manuals and checklists; policies

and procedures established by EPA and the State of New York; information contained in EPA

dockets; information available on EPA websites; EPA timelines on state authorization;

9

memoranda and agreements between EPA and the State of New York on RCRA implementation; and public statements of EPA and the State of New York regarding various matters at issue in this case.  A list of the documents, materials, and sources relied upon by Ms. Williams in forming her opinions in this case is provided in Attachment B.

Ms. Williams is expected to testify that RCRA is a waste management statute and that it provides a number of exemptions and exclusions for materials that are recycled, as they are at Tonawanda Coke.

Ms. Williams is expected to testify that a company's intent in the handling and management of materials is key to understanding how RCRA applies to or does not apply to the materials in question.  She is expected to explain that the provisions in RCRA regarding products, co-products, and recycling are complex but essential to understanding how RCRA and its regulations apply to a facility such Tonawanda Coke.  Ms. Williams will also discuss a number of other key concepts embodied in the RCRA program, including the definition of RCRA treatment, the point of waste generation, the point of waste regulation, the concept of land disposal as it applies to RCRA Subtitle C, the context for active management, and the background surrounding the development of the land disposal restriction regulations.  Ms. Williams is expected to testify that the RCRA definitions of solid waste and hazardous waste involve a number of exemptions and that more than one exemption can apply to a particular material or process.  She is expected to explain that these exemptions are critical to understanding what materials and processes are subject to RCRA regulation at a facility such as Tonawanda Coke.

Ms. Williams is expected to testify that EPA reviews state RCRA programs to ensure they are consistent with the federal RCRA program and no less stringent, and that once the base

RCRA program in a state is authorized by EPA, it operates in lieu of the federal program.  Ms. Williams will discuss the timing and scope of authorization of the base RCRA program in New York, which first occurred during her tenure as EPA's National Program Manager for RCRA.

Ms. Williams is expected to testify that, based on her review of the NYSDEC RCRA inspection reports for Tonawanda Coke, it is her opinion that the NYSDEC RCRA inspectors as early as 1989 concluded correctly that the facility's recycling of its decanter tank tar sludge by mixing it with the coal on the coal piles was exempt from RCRA regulation and/or the sludge was not a solid waste.  She is expected to explain that this recycling activity and the NYSDEC inspector's conclusion were consistent with the requirements for the handling decanter tank tar sludge under EPA's Land Disposal Restriction Program.

Ms. Williams is expected to testify that in the case of the material in the railcar, there was insufficient information to determine whether or not the railcar material would have been classified as a commercial product or a used oil or a hazardous waste.  To the extent the railcar material classified as a product or a used oil, she is expected to testify that material did not require characterization prior to utilizing it in the coke manufacturing process as a density control agent.  Even if it classified as a hazardous waste, she is expected to testify that it could be directly used or reused within the manufacturing process as a substitute for a commercial density control product.  Ms. Williams is expected to testify that Tonawanda Coke obtained adequate test data to ensure the material could be appropriately used for this purpose.

Ms. Williams is expected to testify that she has reviewed summaries of witness statements and other materials that discussed the material on the ground adjacent to the two storage tanks that are the subject of Count 17 in the Indictment.  She is expected to explain that she understands that the material was abandoned and therefore disposed by the prior owner of

133772.00601/36258526v.1

the site prior to the effective date of the RCRA regulations covering this material and thus this material was not subject to RCRA regulations, including RCRA storage and permitting regulations,  unless and until Tonawanda Coke "actively managed" the material.  Ms. Williams is expected to testify that, in her opinion, neither the spreading of coke breeze on the top of the material that was on the ground adjacent to the two storage tanks nor the dismantling of the upper portion of one of the storage tanks constituted "active management" of the previously abandoned material.  Moreover, spreading of coke breeze was not RCRA treatment. She is expected to testify that, in her opinion, the first time the material on the ground adjacent to the two storage tanks was "actively managed" was when a portion of the material was removed for recycling. This removal for recycling did not cause the remaining unexcavated waste to be regulated under RCRA treatment, storage, or disposal regulations.

Ms. Williams is expected to testify that she has reviewed summaries of witness statements and other materials that discussed the mixing of the material that was removed from one of the two storage tanks with coal for use as an ingredient in the manufacture of coke.  She is expected to testify that, in her opinion, this material, which is the subject of Count 18, was not a solid waste under the RCRA regulations or the process did not fall within the ambit of RCRA because from the point at which the material was removed from the tanks, it was managed as a substitute for a product-like material that was not a part of the waste management problem.  Ms. Williams is expected to testify that the mixing of this material with the coal constituted the first step of recycling under the RCRA regulations and was therefore excluded from the RCRA permitting requirements and/or exempt from RCRA regulation.

Ms. Williams is expected to testify that neither the mixing of the material which was removed from the storage tank with coal on the coal piles (Count 18) nor the mixing of the

decanter tank tar sludge with coal on the coal piles (Count 20) prior to insertion into the coke

ovens for the production of product was a regulated RCRA activity.  She is expected to testify

that when recycled in this manner, the materials are excluded from the definition of solid waste,

the activity is exempt from RCRA as legitimate recycling, and this activity does not constitute

RCRA "land disposal."   She is expected to testify that the products of that process were also not

used in a manner that constitutes disposal for the purposes of the RCRA regulation.

## CONCLUSION

Wherefore, the Defendants submit this expert witness disclosure in satisfaction of their

reciprocal discovery obligations under Rule 16(b)(1)(C).

DATED:  Buffalo, N.Y.

February 19, 2013

Respectfully submitted,

/s/ GREGORY F. LINSIN
Gregory F. Linsin, Esq.
BLANK ROME LLP
*Pro Hac Vice*
*Attorney for Defendant*
TONAWANDA COKE CORPORATION
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 772-5813

/s/ JEANNE M. GRASSO
Jeanne M. Grasso, Esq.
BLANK ROME LLP
*Pro Hac Vice*
*Attorney for Defendant*
TONAWANDA COKE CORPORATION
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 772-5927
grasso@blankrome.com

133772.00601/36258526v.1

/s/ RODNEY O. PERSONIUS
Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
*Attorney for Defendant*
MARK KAMHOLZ
350 Main Street
Buffalo, NY  14202
(716) 855-1050
rop@personiusmelber.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February 2013, I electronically filed the foregoing

DEFENDANTS' JOINT EXPERT WITNESS DISCLOSURE with the Clerk of the District

Court using the CM/ECF system, which sent notification of such filing to the following CM/ECF

participants on this case:

    Aaron J. Mango

    Rocky Piaggione

    John J. Molloy


    /s/ GREGORY F. LINSIN
    Gregory F. Linsin, Esq.
    BLANK ROME LLP
    *Pro Hac Vice*
    *Attorney for Defendant*
    TONAWANDA COKE CORPORATION
    600 New Hampshire Avenue, N.W.
    Washington, D.C. 20037
    (202) 772-5813
    Linsin@blankrome.com

133772.00601/36258526v.1