VOL. XX

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------
UNITED STATES OF AMERICA

          -vs-                10-CR-219S

TONAWANDA COKE CORPORATION
MARK L. KAMHOLZ,
                Defendants.
-------------------------------------


        Proceedings held before the

    Honorable William M. Skretny, U.S.

    Courthouse, 2 Niagara Circle, Buffalo,

    New York on March 28, 2013.


    APPEARANCES:

    AARON J. MANGO,
    Assistant United States Attorney,
    ROCKY PIAGGIONE, Senior Counsel,
    U.S. Department of Justice,
    Appearing for the United States.

    GREGORY F. LINSIN, ESQ.,
    JEANNE M. GRASSO, ESQ.,
    ARIEL S. GLASNER, ESQ.,
    Appearing for Tonawanda Coke Corporation.

    RODNEY PERSONIUS, ESQ.,
    Appearing for Mark L. Kamholz.

    Also Present:  Lauren DiFillipo, Paralegal
                 Sheila Henderson, Paralegal


    Michelle L. McLaughlin, RPR,
    Official Reporter,
    U.S.D.C. W.D.N.Y.
    (716)332-3560

4226

1                         I N D E X

2                                                 PAGE

3        VERDICT                                  4241

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              (Jury not present in the courtroom.)

2              THE CLERK:  Criminal case

3   number 2010-CR-219, United States of America versus

4   Tonawanda Coke and Mark Kamholz.

5              THE COURT:  Sorry for the slight delay.

6   Are there any preliminary matters?

7       The attorneys and parties are present for the

8   record.

9              MR. PERSONIUS:  No, your Honor.

10             MR. MANGO:  No, your Honor.

11             MR. LINSIN:  None on behalf of Tonawanda,

12  your Honor.

13             THE COURT:  Okay.  Okay.  We have a new

14  attorney with us, Mr. Glasner, from what I

15  understand.  He's here.  Okay.

16      Chris, if the jury's here we'll have them

17  brought in, please.

18             COURT SECURITY OFFICER:  Sure.

19             (Jury seated.)

20             THE COURT:  Good morning.

21             THE JURY:  Good morning.

22             THE COURT:  Please have a seat.  Okay.  As

23  you can see, ladies and gentlemen, and on our

24  behalf, we're glad to see you here this morning.

25  The attorneys and parties are present.  And the day

1    has come, okay.  We're going to ask you now -- and

2    everything is ready to get you started to -- you

3    can take your notebooks in, if you choose to do

4    that, to the jury deliberation room.  But, you

5    know, use it appropriately from the standpoint of

6    if there are differing entries that some of you may

7    have made, talk it out, work it out.  What's not

8    evidence in terms of the summations, if any of you

9    jotted some notes, and I saw a few of you take

10   notes, make sure you consider that as nonevidence,

11   but as a guide to maybe the direction that you

12   think the deliberations should go.

13       I know you take this case seriously.  And, you

14   know, your duty now is very serious.  You get to

15   decide this case now.  And you have to do it

16   according to the law and following the instructions

17   that I gave you the last couple of days.

18       Your verdict must be unanimous.  You must

19   consider each count separately and as to each

20   defendant separately, understanding that the

21   defendants are cloaked with the presumption of

22   innocence, which never leaves until and if you find

23   that one or more of the defendants on any one or

24   more of the counts has been proven guilty beyond a

25   reasonable doubt.

1     It's a task that you've worked very hard to get

2 to this point.  And I know you've heard me mention

3 many times, it's going to take the application of

4 your common sense, your experience, your

5 intelligence to developing a methodology to get

6 into the indictment, get it resolved in light of

7 those fact issues that only you can decide, because

8 you now become the judges of the facts.

9     I think you know how the rules should work, and

10 that from here on out the communications, if there

11 are any, should be in writing between your

12 foreperson and me, and then if necessary, I join

13 the attorneys and parties into the discussion

14 before I respond, or until we bring you out here

15 for further discussions.

16     Do your best to work through everything.  And

17 it takes respect for each other's points of views.

18 And you've come to know each other, I think, pretty

19 well over the course of the 30-plus days that all

20 of us have been together.  And that's a good thing,

21 because when you spend that much time together, and

22 when you've been as apparently committed as you

23 have been to this particular case, it should allow

24 you to do what everybody selected you to do, and

25 that is to return a unanimous verdict in this case.

1    Because, again, as you've heard me say, nobody

2    knows more about this case than all of you.

3         So, we're about ready to send you out.  It will

4    take just a few moments to wheel in the cart and

5    bring in a couple of exhibits following that into

6    your jury deliberation room.  That will be done

7    while you're there.

8         We have to swear Chris in, the court security

9    officer, by separate oath.  We will do that now,

10   and then he will be responsible for you in a

11   different capacity during your deliberations.

12        We also bid farewell to our two alternates,

13   Mr. Carlson and Mr. Demmer, and we thank you for

14   your service.  You know, I know it's a lot of time

15   to invest and not get to deliberate.  But, frankly,

16   you played a critical role.  We appreciate that.

17   We thank you very much for that.  We ask you please

18   to maintain the confidentiality, the silence, all

19   of that not only in respect for the system, but for

20   your fellow jurors.  And I wish I could have let

21   you, if you had the opportunity to, to sleep in

22   today, but we'd never know.  So we did need you to

23   come here.  Frankly, we're very grateful that you

24   invested the time and the effort that you did.

25   Thank you very much.  And we have to have you leave

1    now.  And if you'd leave your notebooks behind, we

2    will collect those as well.  Thank you very much,

3    gentlemen.  We appreciate it.

4                 (Alternate jurors excused.)

5                 THE COURT:  I didn't tell Chris he could

6    go, but I hope he comes back.  Maybe he doesn't

7    want to get sworn in, I don't know.

8       You had us worried there for a minute, Chris.

9    We didn't know if you were coming back.

10                COURT SECURITY OFFICER:  I didn't know if

11   I was part of their crew.

12                THE COURT:  Colleen, if you could

13   administer the oath, please.

14                (Court security officer oath

15                administered.)

16                THE COURT:  Okay.  If you listen to the

17   oath, it's somewhat harsh.  It kind of ensures that

18   you're going to get some work done without meat or

19   drink, but we will make exceptions for that.

20      We are going to have some lunch brought in for

21   you today as well.  Okay.  And, you know, you're

22   free to eat it or not.  And it's sort of an

23   incentive to keep you fortified so we can get you

24   through this process, and, you know, it's -- it's

25   kind of our thanks for, you know, what you are

4232

1    doing.  And hopefully it will enable you, with

2    maybe your own lunch or whatever, to work through

3    the process as efficiently as you can, keeping in

4    mind what we've said so many times that this is a

5    very important case to both sides.  Okay.

6        Are you ready?  Okay.  It's all up to you.  You

7    are the judges of the facts.  Please start your

8    deliberations, and go forward, and then we'll wait

9    to hear from you when you tell us you have your

10   unanimous verdict.  Okay.  Thank you very much very

11   much, folks.

12             (Jury excused from the courtroom.)

13             THE COURT:  Okay.  If you will keep

14   Colleen posted in terms of your contact numbers,

15   where you are.  Please make every effort, once we

16   do contact you, to get back here as expeditiously

17   as possible.

18             MR. LINSIN:  Your Honor, could I just make

19   one inquiry?

20             THE COURT:  Sure.

21             MR. LINSIN:  With respect to the

22   alternates, and obviously I'm hopeful this

23   circumstance doesn't arise.  But in the event of

24   the disability of one of the 12 sitting jurors, I

25   presume the Court has methods of contacting the

1    alternates to bring them back in?

2             THE COURT:  Yes, we do.

3             MR. LINSIN:  Thank you very much.

4             THE COURT:  Frankly, I don't think it's

5    right to keep them here, but we can track them down

6    with their locater information.

7             MR. LINSIN:  All right.  Thank you, your

8    Honor.

9             THE COURT:  Anything else?

10            MR. LINSIN:  I guess the only other just

11   practical question, your Honor, is how long -- has

12   the Court made a judgment on how long you would

13   have the jury deliberate if we do not wind up with

14   a verdict before the end of the day?  Do we have a

15   time period in mind when we should plan to be back

16   here in the event we have not received the phone

17   call, I guess that's the easiest way to put it.

18            THE COURT:  Well, I would want you here,

19   in the event that nothing happens all day, to be

20   back here before 5:00 o'clock.

21            MR. LINSIN:  All right.

22            THE COURT:  And what I would then do is I

23   would discuss with you what your thoughts are about

24   continuing the deliberations.  I also would like to

25   get a feel from the jury.  Sometimes they will

4234

1    communicate that in terms of whether they're ready

2    to hang it up for the day and move forward, or if

3    they'd like to stay.  And I'll try to accommodate

4    whatever I sense is their preference, if that's

5    okay with you.  But I'll discuss it with you first.

6            MR. LINSIN:  All right.  Thank you, your

7    Honor.

8            THE COURT:  Great.  Okay.

9            MR. LINSIN:  Oh, can we get a copy of the

10   final charge?  There were a couple of modifications

11   that were discussed.  A copy of the charge that's

12   actually going back to the jury.

13           THE COURT:  Yes.  It will take a little

14   bit.

15           MR. LINSIN:  Maybe later -- whenever we

16   come back later in the day, that would be fine.

17           THE COURT:  Yeah, we can have it ready for

18   you.  What do you think?

19           LAW CLERK:  Whenever.

20           THE COURT:  Half an hour?

21           MR. LINSIN:  Sure.

22           THE COURT:  All right.  Okay.

23           MR. LINSIN:  Thank you, your Honor.

24           (Short recess was taken.)

25           (Jury not present in the courtroom.)

1          THE COURT:  Okay.  Colleen, if you would

2     call the case, please.

3          THE CLERK:  Criminal case number

4     2010-CR-219, United States versus Tonawanda Coke

5     and Mark Kamholz.

6          THE COURT:  And the attorneys and parties

7     are back present.  May I have the note, please?

8     Okay.  For your information, I received a note

9     about 12:51.  Then I set Colleen to contacting

10    everybody.  And I thought I'd read the note to you.

11    And you should have been distributed a copy of

12    6 NYCRR 214.10.  The note is from and signed by the

13    person that I believe is the foreperson, that's

14    juror number 9, and that's Dennis McDonell.  Okay.

15       The note reads as follows:  Dated today.  The

16    note's timed at 12:50.  And the note reads:  "Can

17    we see T-6 NYCRR 214.10(a) and NYCRR 10(b)."  And

18    then in paren, "Or if we have them, where are

19    they", question mark, close paren.  My favorite

20    part of the note, for whatever that's worth.

21          MR. LINSIN:  Could I ask you to reread the

22    numbers?

23          THE COURT:  Yes, it's Title 6 I think

24    what's 214.10(a), and 214.10(b).  I guess -- I'm

25    assuming it's 214.10 and then sub A and 214.10 sub

1    B.  And that's what I distributed to you.  And I'd

2    like to get your views on what you suggest that I

3    do in response.

4       I'll tell you what I think, and then you tell

5    me what you think.  And I don't view this as

6    problematic, responding to this request.  I could

7    read both subsections of Title 10 -- or of Title 6

8    that are requested.  But it would seem to me if I

9    do that, they should, in any event get this title

10   and the sections.  So I don't know how you want to

11   proceed.  I'll listen to what anybody else has to

12   say.  If you want me to read it, I will and then

13   give them a copy, or just send in a copy with a

14   note saying this is pursuant to your request.

15   Thank you.

16          MR. MANGO:  We're good with if you want to

17   send in the copy, your Honor, or however you want

18   to proceed.

19          MR. LINSIN:  We agree.  That seems like it

20   would be the most efficient, and just -- with just

21   that indication, and they can take as a, you know,

22   a supplemental provision to the Court's legal

23   instructions.  You know, something like that.

24          THE COURT:  I think what I'll say though

25   is I've consulted with the attorneys, and as you

1    requested, I am enclosing the Title 6 provision.

2    Okay.  Does that work for everybody?

3              MR. PERSONIUS:  It does for us, your

4    Honor.

5              THE COURT:  Okay.  I'll do that forthwith.

6    I'll get it in to the jury, and then we'll keep you

7    posed as things go forward.  All right.

8              MR. LINSIN:  Thank you, your Honor.

9              MR. MANGO:  Thank you, your Honor.

10             MR. PERSONIUS:  Thank you very much.

11             (Short recess was taken.)

12             (Jury not present in the courtroom.)

13             THE COURT:  Colleen, if you call the case,

14   please.

15             THE CLERK:  Criminal case 2010-CR-219,

16   United States versus Tonawanda Coke and Mark

17   Kamholz.

18             THE COURT:  Okay.  Good afternoon.  The

19   record will reflect that the attorneys and parties

20   are back present.  I did receive a note from the

21   jury, and virtually immediately after receipt I did

22   contact everybody.  The time was 3:25 p.m.  And

23   this is our first opportunity to assemble after

24   notification by note.  The note is timed.  It's

25   dated today -- but it's timed 3:20.  So it took a

1    little time to get it in the envelope and get it

2    walked over to chambers.

3       It's not entirely clear to me what the jury is

4    saying.  I believe we have a verdict.  That's my

5    assessment.  But, the note reads as follows.  "We

6    are done."  All right.  Unsigned.  Okay.  So, you

7    know, I think that that means that they have a

8    verdict.

9       My suggestion is that we do this, that we bring

10   the entire jury in, and I think, one, if the

11   foreman is carrying what looks like the verdict

12   form, it's probably an indication that the jury has

13   a verdict.  But in any event, I will ask him if he

14   would tell me whether or not the note, which I will

15   read back to him, means that in speaking for the

16   jury he, the foreperson, has a unanimous verdict to

17   return to the court.  And if he says yes, then we

18   go forward.

19      The way I would like to go forward, and what is

20   my standard procedure, especially in lengthier

21   indictments, I would like to explain to the jury

22   that I will take the verdict form, and -- I will

23   have Colleen take it and bring it up here in the

24   presence of the jury.  What I would like to do is

25   review it, and then advise everybody if it is in

1    conformity both as to substance and in form.

2        I would like to do it at my conference room

3    just outside the courtroom and send the jury back.

4    I don't like to do it in front of the jury,

5    necessarily.  It, I don't think, will take a long

6    time.  But I just want to track everything, make

7    sure it's signed, make sure the sequence is

8    correct.  If there's an issue in my view with

9    either form or substance, I can then notify all of

10   you, we can discuss it, and then I can bring the

11   jury back, and then address it that way.  I think

12   that's the safest way that I know of proceeding.

13   And, you know, I'm not going anywhere.  I'm just

14   going to take a look at it and immediately come

15   back out and that's the way I suggest to you that

16   we proceed.

17       From the government's standpoint, Mr. Mango,

18   does that work?

19            MR. MANGO:  Yes, your Honor.

20            THE COURT:  From the defense standpoint,

21   Mr. Linsin?

22            MR. LINSIN:  That is fine with us, your

23   Honor.

24            THE COURT:  Mr. Personius?

25            MR. PERSONIUS:  Yes, your Honor.

1           THE COURT:  Okay.  Once I'm done and the

2     jury verdict -- well the jury form will be returned

3     to the foreperson, the foreman of the jury, and

4     then Colleen will read each count individually

5     starting with 1 through 20 and ask for the verdict

6     to be entered, or at least answered to her inquiry

7     for purposes of the record, and then we'll enter it

8     afterwards if that's acceptable to everybody as

9     well.  Mr. Mango?

10          MR. MANGO:  Yes, your Honor.

11          THE COURT:  Mr. Linsin?

12          MR. LINSIN:  That's fine.

13          THE COURT:  Mr. Personius?

14          MR. PERSONIUS:  Yes, your Honor.

15          THE COURT:  Okay.  All right.  We need to

16    notify Chris to bring the jury in, please.

17       Okay.  I may have said 1 through -- 1 through

18    20.  Did I say that?  I meant to say 1 through 19.

19       I will exit with Mr. Moeller too, by the way,

20    if it's okay with everybody, and that will assist

21    me in terms of working through everything.  And he

22    stands bodyguard outside the conference room door

23    as well.

24             (Jury seated.)

25             THE COURT:  Good afternoon, ladies and

1   gentlemen.  Please have a seat.  Okay.  As all of

2   you know, we are reassembled in the case of United

3   States versus Tonawanda Coke Corporation and Mark

4   Kamholz, defendants.  I do have your most recent

5   note which was recorded I think on your

6   correspondence to me at 3:20 p.m. this afternoon.

7        Mr. McDonell, I believe you are the foreman of

8   the jury?

9            THE FOREMAN:  Yes.

10           THE COURT:  Okay.  Would you mind

11  standing, please, just so everybody can clearly

12  hear you.  The note is not totally clear.  All

13  right.  The note reads:  "We are done."  And, you

14  know, that can probably be interpreted a number of

15  ways.  But, I guess from our standpoint, are you

16  reporting that you are authorized on behalf of all

17  of the ladies and gentlemen of the jury to return a

18  unanimous verdict for the Court's consideration?

19           THE FOREMAN:  On all counts, yes.

20           THE COURT:  Okay.  What I'd like to do --

21  and thank you for that clarification.  My practice

22  is to have you give your original verdict form to

23  my courtroom deputy, Colleen Demma.  She'll take it

24  from you.  What I will do then is accept it, and I

25  will send you back to the deliberation room.  But I

1    will take it and I will review it to make sure that

2    it's, at least to my review, consistent in form and

3    in substance.  And then if there are any issues, I

4    have an opportunity to discuss it with the lawyers,

5    and then I'll bring you back.

6        If there are no issues, I simply bring you

7    back, and then I will have the verdict form

8    returned to you, Mr. McDonnell.  And we will take

9    the verdict, and on your authorization that you

10   speak for the jury, we will go through each count

11   individually and separately.  It will be read to

12   you by Miss Demma, and then you respond as the

13   foreman of the jury for each count.  And then we'll

14   proceed from Count 1 through 19 in that fashion.

15       If everything is in order when that's complete,

16   then the verdict, as a unanimous verdict, will be

17   entered into the record.  Is that understood by

18   you?

19              THE FOREMAN:  Yes.

20              THE COURT:  Okay.  I guess the first step

21   in that process, Miss Demma, if you would get the

22   folder that contains I think the verdict form.

23       And the record will reflect that I received in

24   the manila folder the verdict form in this case.

25       I am going to ask you now, ladies and

1    gentlemen, before I go to my conference room to

2    review it, for you to go to the deliberation room

3    and just wait.  It should just be a matter of

4    minutes, unless there is an issue I have to discuss

5    with the lawyers.  Okay.  Thank you very much.

6              (Jury excused from the courtroom.)

7              THE COURT:  Okay.  You may have a seat

8    I'll be right back.

9              (The Judge left the bench.)

10             (Jury not present in the courtroom.)

11             THE COURT:  Okay.  The attorneys and

12   parties are back present.  I've completed the

13   review of the verdict form, and I find that it

14   appears to be in order both as to form and

15   substance.  Given that, I will ask Colleen to

16   notify the security officer to return the jury to

17   the courtroom, and then I will give you, Colleen,

18   the verdict form to return to Mr. McDonell.  Okay?

19             THE CLERK:  Okay.

20             (Jury seated.)

21             THE COURT:  Thank you.  Please have a

22   seat.  Okay, ladies and gentlemen, I have completed

23   the review of the verdict form.  I advised the

24   attorneys that I have found it to appear to be in

25   order as far as form and substance is concerned.

1    I'm going to return the verdict form in its folder

2    to Miss Demma.  She will return it to Mr. McDonell.

3         And if you wouldn't mind standing,

4    Mr. McDonell, we would appreciate it.

5         And once again, Mr. McDonell, the verdict that

6    you are about to return you are authorized to do so

7    by the ladies and gentlemen of the jury, is that

8    correct?

9              THE FOREMAN:  Correct, sir.

10             THE COURT:  Thank you.

11             THE CLERK:  On Count 1, violation of the

12   Clean Air Act, pressure relief valve, 2005.

13        From on or about July 29, 2005, to on or about

14   December 31st, 2005, in the Western District of New

15   York, the defendants, Tonawanda Coke Corporation

16   and Mark L. Kamholz, did knowingly operate and

17   cause to be operated a stationary source, to wit,

18   the Tonawanda Coke Corporation, in violation of its

19   Title V permit requirements by emitting coke oven

20   gas from the pressure relief valve in the

21   by-products department, an unpermitted emission

22   source, condition 4 of the Tonawanda Coke

23   Corporation's Title V permit.

24        All in violation of Title 42, United States

25   Code, Section 7413(c)(1) and Title 18, United

1    States Code, Section 2.

2         How do you find on Count 1 as to the defendant

3    Tonawanda Coke Corporation?

4              THE FOREMAN:  Guilty.

5              THE CLERK:  How do you find on Count 1 as

6    to the defendant Mark L. Kamholz?

7              THE FOREMAN:  Guilty.

8              THE CLERK:  Count 2, violation of the

9    Clean Air Act, pressure relief valve, 2006.

10        From on or about January 1, 2006, to on or

11   about December 31, 2006, in the Western District of

12   New York, the defendants, Tonawanda Coke

13   Corporation and Mark L. Kamholz, did knowingly

14   operate and cause to be operated a stationary

15   source, to wit, the Tonawanda Coke Corporation, in

16   violation of its Title V permit requirements by

17   emitting coke oven gas from a pressure relief valve

18   in the by-products department, an unpermitted

19   emission source, condition 4 of the Tonawanda Coke

20   Corporation's Title V permit.

21        All in violation of Title 42, United States

22   Code, Section 7413(c)(1) and Title 18, United

23   States Code, Section 2.

24        How do you find on Count 2 as to the defendant

25   Tonawanda Coke Corporation?

1          THE FOREMAN:  Guilty.

2          THE CLERK:  How do you find on Count 2 as

3     to the defendant Mark L. Kamholz?

4          THE FOREMAN:  Guilty.

5          THE CLERK:  Count 3, violation of the

6     Clean Air Act, pressure relief valve, 2007.

7        From on or about January 1st, 2007, to on or

8     about December 31st, 2007, in the Western District

9     of New York, the defendants, Tonawanda Coke

10    Corporation and Mark L. Kamholz, did knowingly

11    operate and cause to be operated a stationary

12    source, to wit, the Tonawanda Coke Corporation, in

13    violation of its Title V permit requirements by

14    emitting coke oven gas from a pressure relief valve

15    in the by-products department, an unpermitted

16    emission source, condition 4 of the Tonawanda Coke

17    Corporation's Title V permit.

18        All in violation of Title 42, United States

19    Code, Section 7413(c)(1) and Title 18, United

20    States Code, Section 2.

21        How do you find on Count 3 as to the defendant

22    Tonawanda Coke Corporation?

23          THE FOREMAN:  Guilty.

24          THE CLERK:  How do you find on Count 3 as

25    to the defendant Mark L. Kamholz?

1           THE FOREMAN:  Guilty.

2           THE CLERK:  On Count 4, violation of the

3   Clean Air Act, pressure relief valve, 2008.

4      From on or about January 1st, 2008, to on or

5   about December 31st, 2008, in the Western District

6   of New York, the defendants, Tonawanda Coke

7   Corporation and Mark L. Kamholz did knowingly

8   operate and cause to be operated a stationary

9   source, to wit, the Tonawanda Coke Corporation, in

10  violation of its Title V permit requirements by

11  emitting coke oven gas from a pressure relief valve

12  in the by-products department, an unpermitted

13  emission source, condition 4 of the Tonawanda Coke

14  Corporation's Title V permit.

15     All in violation of Title 42, United States

16  Code, Section 7413(c)(1) and Title 18, United

17  States Code, Section 2.  How do you find on Count 4

18  as to the defendant Tonawanda Coke Corporation?

19          THE FOREMAN:  Guilty.

20          THE CLERK:  How do you find on Count 4 as

21  to the defendant Mark L. Kamholz?

22          THE FOREMAN:  Guilty.

23          THE CLERK:  On Count 5, violation of the

24  Clean Air Act, pressure relief valve, 2009.

25     From on or about January 1st, 2009, to on or

1    about December 31st, 2009, in the Western District

2    of New York, the defendants, Tonawanda Coke

3    Corporation and Mark L. Kamholz, did knowingly

4    operate and cause to be operated a stationary

5    source, to wit, the Tonawanda Coke Corporation, in

6    violation of its Title V permit requirements by

7    emitting coke oven gas from a pressure relief valve

8    in the by-products department, an unpermitted

9    emission source, condition 4 of the Tonawanda Coke

10   Corporation's Title V permit.

11       All in violation of Title 42, United States

12   Code, Section 7413(c)(1) and Title 18, United

13   States Code, Section 2.

14       How do you find on Count 5 as to the defendant

15   Tonawanda Coke Corporation?

16             THE FOREMAN:  Guilty.

17             THE CLERK:  How do you find on Count 5 as

18   to the defendant Mark L. Kamholz?

19             THE FOREMAN:  Guilty.

20             THE CLERK:  On Count 6, violation of the

21   Clean Air Act, baffle system, quench tower 1 west,

22   2005.

23       From on or about July 29th, 2005, to on or

24   about December 31st, 2005, in the Western District

25   of New York, the defendants, Tonawanda Coke

1    Corporation and Mark L. Kamholz, did knowingly

2    operate and cause to be operated a stationary

3    source, to wit, the Tonawanda Coke Corporation, in

4    violation of its Title V permit requirements by

5    operating the western quench tower, quench tower

6    number 1, at the coke corporation without a baffle

7    system installed in such quench tower, condition 96

8    of the Tonawanda Coke Corporation's Title V permit.

9        All in violation of Title 42, United States

10   Code, Section 7413(c)(1) and Title 18, United

11   States Code, Section 2.

12       How do you find on Count 6 as to the defendant

13   Tonawanda Coke Corporation?

14               THE FOREMAN:  Not guilty.

15               THE CLERK:  How do you find on Count 6 as

16   to the defendant Mark L. Kamholz?

17               THE FOREMAN:  Not guilty.

18               THE CLERK:  On Count 7, violation of the

19   Clean Air Act, baffle system, quench tower 1

20   west, 2006.

21       From on or about January 1st, 2006, to on or

22   about December 31st, 2006, in the Western District

23   of New York, the defendants, Tonawanda Coke

24   Corporation and Mark L. Kamholz, did knowingly

25   operate and cause to be operated a stationary

1    source, to wit, the Tonawanda Coke Corporation in

2    violation of its Title V permit requirements by

3    operating the western quench tower, quench tower

4    number 1, at the Tonawanda Coke Corporation without

5    a baffle system installed in such quench tower,

6    condition 96 of the Tonawanda Coke Corporation's

7    Title V permit.

8        All in violation of Title 42, United States

9    Code, Section 7413(c)(1) and Title 18, United

10   States Code, Section 2.

11       How do you find on Count 7 as to the defendant

12   Tonawanda Coke Corporation?

13            THE FOREMAN:  Not guilty.

14            THE CLERK:  How do you find on Count 7 as

15   to the defendant Mark L. Kamholz?

16            THE FOREMAN:  Not guilty.

17            THE CLERK:  Count 8, violation of the

18   Clean Air Act, baffle system, quench tower 1

19   west, 2007.

20       From on or about January 1st, 2007, to on or

21   about December 31st, 2007, in the Western District

22   of New York, the defendants, Tonawanda Coke

23   Corporation and Mark L. Kamholz, did knowingly

24   operate and cause to be operated a stationary

25   source, to wit, the Tonawanda Coke Corporation, in

1    violation of its Title V permit requirements by

2    operating the western quench tower, quench tower

3    number 1, at the Tonawanda Coke Corporation without

4    a baffle system installed in such quench tower,

5    condition 96 of the Tonawanda Coke Corporation's

6    Title V permit.

7        All in violation of Title 42, United States

8    Code, Section 7413(c)(1) and Title 18, United

9    States Code, Section 2.

10       How do you find on Count 8 as to the defendant

11   Tonawanda Coke Corporation?

12             THE FOREMAN:  Not guilty.

13             THE CLERK:  How do you find on Count 8 as

14   to defendant Mark L. Kamholz?

15             THE FOREMAN:  Not guilty.

16             THE CLERK:  On Count 9, violation of the

17   Clean Air Act, baffle system, quench tower 1

18   west, 2008.

19       From on or about January 1st, 2008, to on or

20   about December 31st, 2008, in the Western District

21   of New York, the defendants Tonawanda Coke

22   Corporation and Mark L. Kamholz did knowingly

23   operate and cause to be operated a stationary

24   source, to wit, the Tonawanda Coke Corporation in

25   violation of its Title V permit requirements by

1    operating the western quench tower, quench tower

2    number 1, at the Tonawanda Coke Corporation without

3    a baffle system installed in such quench tower,

4    condition 96 of the Tonawanda Coke Corporation's

5    Title V permit.

6        All in violation of Title 42, United States

7    Code, Section 7413(c)(1), and Title 18, United

8    States Code, Section 2.

9        How do you find on Count 9 as to the defendant

10   Tonawanda Coke Corporation?

11             THE FOREMAN:  Guilty.

12             THE CLERK:  How do you find on Count 9 as

13   to the defendant Mark L. Kamholz?

14             THE FOREMAN:  Guilty.

15             THE CLERK:  On Count 10, violation of the

16   Clean Air Act, baffle system, quench tower 1

17   west, 2009.

18        From on or about January 1st, 2009, to on or

19   about December 31st, 2009, in the Western District

20   of New York, the defendants, Tonawanda Coke

21   Corporation and Mark L. Kamholz, did knowingly

22   operate and cause to be operated a stationary

23   source, to wit, the Tonawanda Coke Corporation, in

24   violation of its Title V permit requirements by

25   operating the western quench tower, quench tower

1    number 1, at the Tonawanda Coke Corporation without

2    a baffle system installed in such quench tower,

3    condition 96 of the Tonawanda Coke Corporation's

4    Title V permit.

5        All in violation of Title 42, United States

6    Code, Section 7413(c)(1), and Title 18, United

7    States Code, Section 2.

8        How do you find on Count 10 as to the defendant

9    Tonawanda Coke Corporation?

10             THE FOREMAN:  Not guilty.

11             THE CLERK:  How do you find on Count 10 as

12   to defendant Mark L. Kamholz?

13             THE FOREMAN:  Not guilty.

14             THE CLERK:  On Count 11, violation of the

15   Clean Air Act, baffle system, quench tower 2 east,

16   2005.

17       From on or about July 29, 2005, to on or about

18   December 31st, 2005, in the Western District of New

19   York, the defendants, Tonawanda Coke Corporation

20   and Mark L. Kamholz, did knowingly operate and

21   cause to be operated a stationary source, to wit,

22   the Tonawanda Coke Corporation, in violation of its

23   Title V permit requirements by operating the

24   eastern quench tower, quench tower number 2, at the

25   Tonawanda Coke Corporation without a baffle system

4254

1    installed in such quench tower, condition 97 of the

2    Tonawanda Coke Corporation's Title V permit.

3         All in violation of Title 42, United States

4    Code, Section 7413(c)(1) and Title 18 United States

5    Code, Section 2.

6         How do you find on Count 11 as to the defendant

7    Tonawanda Coke Corporation?

8              THE FOREMAN:  Guilty.

9              THE CLERK:  How do you find on Count 11 as

10   to the defendant Mark L. Kamholz?

11             THE FOREMAN:  Guilty.

12             THE CLERK:  Count 12, violation of the

13   Clean Air Act, baffle system, quench tower 2 east,

14   2006.

15        From on or about January 1st, 2006, to on or

16   about December 31st, 2006, in the Western District

17   of New York, the defendants, Tonawanda Coke

18   Corporation and Mark L. Kamholz, did knowingly

19   operate and cause to be operated a stationary

20   source, to wit, the Tonawanda Coke Corporation, in

21   violation of its Title V permit requirements by

22   operating the eastern quench tower, quench tower

23   number 2, at the Tonawanda Coke Corporation,

24   without a baffle system installed in such quench

25   tower, condition 97 of the Tonawanda Coke

1    Corporation's Title V permit.

2        All in violation of Title 42, United States

3    Code, Section 7413(c)(1) and Title 18, United

4    States Code, Section 2.

5        How do you find on Count 12 as to the defendant

6    Tonawanda Coke Corporation?

7                THE FOREMAN:  Guilty.

8                THE CLERK:  How do you find on Count 12 as

9    to the defendant Mark L. Kamholz?

10                THE FOREMAN:  Guilty.

11                THE CLERK:  Count 13, violation of the

12    Clean Air Act, baffle system, quench tower 2

13    east, 2007.

14        From on or about January 1st, 2007 to on or

15    about December 31st, 2007, in the Western District

16    of New York, the defendants, Tonawanda Coke

17    Corporation and Mark L. Kamholz, did knowingly

18    operate and cause to be operated a stationary

19    source, to wit, the Tonawanda Coke Corporation in

20    violation of its Title V permit requirements by

21    operating an eastern quench tower, quench tower

22    number 2, at the Tonawanda Coke Corporation without

23    a baffle system installed in such quench tower,

24    condition 90 of the Tonawanda Coke Corporation's

25    Title V permit.

1          All in violation of Title 42, United States

2     Code, Section 7413(c)(1) and Title 18, United

3     States Code, Section 2.

4          How do you find on Count 13 as to the defendant

5     Tonawanda Coke Corporation?

6               THE FOREMAN:  Guilty.

7               THE CLERK:  How do you find on Count 13 as

8     to the defendant Mark L. Kamholz?

9               THE FOREMAN:  Guilty.

10              THE CLERK:   Count 14, violation of the

11    Clean Air Act, baffle system, quench tower 2

12    east, 2008.

13         From on or about January 1st, 2008, to on or

14    about December 31st, 2008, in the Western District

15    of New York, the defendants, Tonawanda Coke

16    Corporation and Mark L. Kamholz, did knowingly

17    operate and cause to be operated a stationary

18    source, to wit, the Tonawanda Coke Corporation, in

19    violation of its Title V permit requirements by

20    operating the eastern quench tower, quench tower

21    number 2, at the Tonawanda Coke Corporation without

22    a baffle system installed in such quench tower,

23    condition 97 of the Tonawanda Coke Corporation's

24    Title V permit.

25         All in violation of Title 42, United States

1     Code, Section 7413(c)(1) and Title 18, United

2     States Code, Section 2.

3          How do you find on Count 14 as to the defendant

4     Tonawanda Coke Corporation?

5               THE FOREMAN:  Guilty.

6               THE CLERK:  How do you find on Count 14 as

7     to the defendant Mark L. Kamholz?

8               THE FOREMAN:  Guilty.

9               THE CLERK:  Count 15, violation of the

10    Clean Air Act, baffle system, quench tower 2 east,

11    2009.

12         From on or about January 1st, 2009, to on or

13    about November 15th, 2009, in the Western District

14    of New York, the defendants, Tonawanda Coke

15    Corporation and Mark L. Kamholz, did knowingly

16    operate and cause to be operated a stationary

17    source, to wit, the Tonawanda Coke Corporation, in

18    violation of its Title V permit requirements by

19    operating the eastern quench tower, quench tower

20    number 2, at the Tonawanda Coke Corporation without

21    a baffle system installed in such quench tower,

22    condition 97 of the Tonawanda Coke Corporation's

23    Title V permit.

24         All in violation of Title 42, United States

25    Code, Section 7413(c)(1) and Title 18, United

1    States Code, Section 2.

2         How do you find on Count 15 as to the defendant

3    Tonawanda Coke Corporation?

4              THE FOREMAN:  Guilty.

5              THE CLERK:  How do you find on Count 15 as

6    to the defendant Mark L. Kamholz?

7              THE FOREMAN:  Guilty.

8              THE CLERK:  Count 16, obstruction of

9    justice, 2009.

10        From on or about April 14th, 2009, to on or

11   about April 21st, 2009, in the Western District of

12   New York, the defendants, Tonawanda Coke

13   Corporation and Mark L. Kamholz, did corruptly

14   influence, obstruct, and impede and endeavor to

15   influence, obstruct, and impede the due and proper

16   administration of the law under which a pending

17   proceeding was being had before the United States

18   Environmental Protection Agency, EPA, an agency of

19   the United States government, by instructing a

20   Tonawanda Coke Corporation employee to conceal,

21   during an EPA inspection, the fact that a pressure

22   relief valve in the by-products department, during

23   normal operations, emitted coke oven gas to the

24   atmosphere, in violation of the Tonawanda Coke

25   Corporation's Title V operating permit.

1          All in violation of Title 18, United States

2     Code, Sections 1505 and 2.

3          How do you find on Count 16 as to the defendant

4     Tonawanda Coke Corporation?

5               THE FOREMAN:  Not guilty.

6               THE CLERK:  How do you find on Count 16 as

7     to the defendant Mark L. Kamholz?

8               THE FOREMAN:  Guilty.

9               THE CLERK:  Count 17, violation of the

10    Resource Conservation and Recovery Act, storage of

11    toxic waste on the ground adjacent to Barrett

12    tanks, 1998 to 2009.

13         From at least in or about May of 1998 to on or

14    about December 17th, 2009, the exact dates unknown,

15    in the Western District of New York the defendants,

16    Tonawanda Coke Corporation and Mark L. Kamholz, did

17    knowingly store and cause to be stored on the

18    ground adjacent to two large deteriorating tanks at

19    the Tonawanda Coke Corporation, a waste exhibiting

20    the toxicity characteristic for benzene, a

21    hazardous waste identified under the Resource

22    Conservation and Recovery Act, RCRA, without a

23    permit to store such hazardous waste as required

24    under RCRA.

25         All in violation of Title 42, United States

4260

1    Code, Section 6928(d)(2)(A) and Title 18, United

2    States Code, Section 2.

3        Count 17 continued.  Part A, defendant

4    Tonawanda Coke Corporation.

5        How do you find Count 17 as to the defendant

6    Tonawanda Coke Corporation?

7            THE FOREMAN:  Guilty.

8            THE CLERK:  As to Count 17, do you find

9    that the defendant Tonawanda Coke Corporation

10   violated the Resource Conservation and Recovery Act

11   every day from on or about May 31st, 1998, to on or

12   about December 17th, 2009?

13           THE FOREMAN:  Yes.

14           THE CLERK:  How do you find on Count 17 as

15   to the defendant Mark Kamholz?

16           THE FOREMAN:  Guilty.

17           THE CLERK:  As to Count 17, do you find

18   that defendant Mark Kamholz violated the Resource

19   Conservation and Recovery Act every day from on or

20   about May 31st, 1998, to on or about December 7,

21   2009?

22           THE FOREMAN:  Yes.

23           THE CLERK:  Count 18, violation of the

24   Resource Conservation and Recovery Act, disposal of

25   toxic waste from in and around the Barret

1   tanks, 2009.

2       From in or about June of 2009 to on or about

3   September 17th, 2009, the exact dates unknown, in

4   the Western District of New York, the defendants,

5   Tonawanda Coke Corporation and Mark L. Kamholz, did

6   knowingly dispose and cause to be disposed a waste

7   exhibiting the toxicity characteristic for benzene,

8   a hazardous waste identified under the Resource

9   Conservation and Recovery Act, RCRA, originating

10  from in and around the two large deteriorating

11  tanks at the Tonawanda Coke Corporation, without a

12  permit to dispose of such hazardous waste as

13  required under RCRA.

14      All in violation of Title 42, United States

15  Code, Section 6928(d)(2)(A) and Title 18, United

16  States Code, Section 2.

17      How do you find on Count 18 as to defendant

18  Tonawanda Coke Corporation?

19          THE FOREMAN:  Guilty.

20          THE CLERK:  As to Count 18, do you find

21  that the defendant Tonawanda Coke Corporation

22  violated the Resource Conservation and Recovery Act

23  every day from on or about June 30th, 2009, to on

24  or about September 17th, 2009?

25          THE FOREMAN:  Yes.

4262

1           THE CLERK:  How do you find on Count 18 as

2     to defendant Mark Kamholz?

3           THE FOREMAN:  Guilty.

4           THE CLERK:  As to Count 18, do you find

5     that the defendant Mark Kamholz violated the

6     Resource Conservation and Recovery Act every day

7     from on or about June 30th, 2009, to on or about

8     September 7, 2009?

9           THE FOREMAN:  Yes.

10          THE CLERK:  Count 19, violation of the

11    Resource Conservation and Recovery Act, disposal of

12    decanter tank tar sludge K087, 2005 to 2009.

13       From on or about August 2nd, 2005, to on or

14    about December 17, 2009, in the Western District of

15    New York, the defendants, Tonawanda Coke

16    Corporation and Mark L. Kamholz, did knowingly

17    dispose and cause to be disposed decanter tank tar

18    sludge from coking operations, K087, a hazardous

19    waste identified and listed under the Resource

20    Conservation and Recovery Act, RCRA, originating

21    from the by-products department at the Tonawanda

22    Coke Corporation and spread on to the coalfield

23    without a permit to dispose of such hazardous waste

24    as required under RCRA.

25       All in violation of Title 42, United States

1   Code, Section 6928(d)(2)(A) and Title 18 United

2   States Code, Section 2.

3       How do you find on Count 19 as to the defendant

4   Tonawanda Coke Corporation?

5               THE FOREMAN:  Guilty.

6               THE CLERK:  As to Count 19, do you find

7   that defendant Tonawanda Coke Corporation violated

8   the Resource Conservation and Recovery Act every

9   day from on or about August 2nd, 2005, to on or

10  about December 7th, 2009?

11              THE FOREMAN:  Yes.

12              THE CLERK:  How do you find on Count 19 as

13  to defendant Mark Kamholz?

14              THE FOREMAN:  Guilty.

15              THE CLERK:  As to Count 19, do you find

16  that defendant Mark Kamholz violated the Resource

17  Conservation and Recovery Act every day from on or

18  about August 2nd, 2005 to on or about

19  December 17th, 2009?

20              THE FOREMAN:  Yes.

21              THE COURT:  Thank you, Colleen.

22  Mr. McDonell, on behalf of all of the ladies and

23  gentlemen of the jury as the foreperson -- or the

24  foreman of this jury, is that the entire verdict

25  that you were authorized unanimously to return as

1      to each defendant on each count of this indictment?

2                  THE FOREMAN:  Yes, it is.

3                  THE COURT:  Okay.  Thank you very much for

4      your service as foreman.  We'd like to take the

5      verdict form and the folder.  We'll take that.  You

6      may have a seat once you give that to Miss Demma.

7          And as to the attorneys for defendant Tonawanda

8      Coke, is there anything additional, Mr. Linsin?

9                  MR. LINSIN:  Your Honor, I would request

10     that the jury be polled.

11                 THE COURT:  Okay.  Mr. Personius, on

12     behalf of defendant, Mark Kamholz, is there any

13     request?

14                 MR. PERSONIUS:  We join in that request,

15     your Honor.

16                 THE COURT:  From the government's

17     standpoint, Mr. Mango?

18                 MR. MANGO:  No request, your Honor.

19                 THE COURT:  All right.  Thank you.  Okay.

20     Ladies and gentlemen, each of you will be asked by

21     Miss Demma, in summary terms by me, whether in fact

22     the verdict rendered as announced by your foreman,

23     Mr. McDonell, is in point of fact your verdict.

24         Miss Demma, if you would poll the jury, please.

25                 THE CLERK:  Juror number 1, Mrs. Lambert,

1      does your verdict as published constitute your

2      individual verdict in all respects?

3                  A JUROR:  Yes, it does.

4                  THE CLERK:  Juror number 2, Mr. Wilson,

5      does your verdict as published constitute your

6      individual in all respects?

7                  A JUROR:  Yes.

8                  THE CLERK:  Juror number 3, Mr. Collins,

9      does your verdict as published constitute your

10     individual verdict in all respects?

11                 A JUROR:  Yes, it does.

12                 THE CLERK:  Juror number 4, Mrs. Andolina,

13     does your verdict as published constitute your

14     individual verdict in all respects?

15                 A JUROR:  Yes.

16                 THE CLERK:  Juror number 5,

17     Mrs. Funderburk, does your verdict as published

18     constitute your individual verdict in all respects?

19                 A JUROR:  Yes, it does.

20                 THE CLERK:  Juror number 6,

21     Miss Majerowski, does your verdict as published

22     constitute your individual verdict in all respects?

23                 A JUROR:  Yes, it does.

24                 THE CLERK:  Juror number 7, Mr. Bauman,

25     does your verdict as published constitute your

4266

1     individual verdict in all respects?

2               A JUROR:  Yes, it does.

3               THE CLERK:  Juror number 8,

4     Mrs. Palistrant, does your verdict as published

5     constitute your individual varied in all respects?

6               A JUROR:  Yes, it does.

7               THE CLERK:  Juror number 9, Mr. McDonell,

8     does your verdict as published constitute your

9     individual verdict in all respects?

10              A JUROR:  Yes, it does.

11              THE CLERK:  Juror number 10, Miss Russ,

12    does your verdict as published constitute your

13    individual verdict in all respects?

14              A JUROR:  Yes, it does.

15              THE CLERK:  Juror number 11, Ms. Malyszka,

16    does your verdict as published constitute your

17    individual verdict in all the respects?

18              A JUROR:  Yes, it does.

19              THE CLERK:  Juror number 12,

20    Mrs. Stelianou, does your verdict as published

21    constitute your individual verdict in all respects?

22              A JUROR:  Yes, it does.

23              THE COURT:  Okay.  The verdict as

24    returned, as published, and as affirmed will be now

25    entered as part of the court record.

1           Ladies and gentlemen, you've been here a long

2       time, and I'm about to discharge you from jury

3       service.  By a long time, more than a month is a

4       long time, as you know, right?  And what I'm going

5       to ask you to do is this.  I know you've put up

6       with me for a long time, but I'd ask you to stay,

7       if you have the time, for just a few minutes

8       afterwards so that I can speak with you in the jury

9       deliberation room.  If you cannot stay and you have

10      to leave, I want to thank those of you that leave

11      and let you know on behalf of all of us that we

12      appreciate your service.

13          The duration of the time you spent really

14      doesn't necessarily speak for what we called upon

15      you to do in this particular case.  And I suspect

16      that you probably didn't know what it was going to

17      be like to serve as jurors for this period of time

18      in this kind of a case when you started out.

19          And, you know, I watched you every day, and you

20      know that, and we worked together every day, and

21      that's all we can really expect is that you appear

22      to make every single best effort that you can to

23      stay engaged.  And this case in many respects by

24      way of subject matter is a very complicated case,

25      because it involves terminology most of you and

1    most of us are not familiar with.

2        And I think there's a lesson in this for all of

3    us, and maybe more graphically to you than anybody

4    else, and I hope that you understand how

5    significant the system of justice is in this

6    country and what it means to be a -- to have a

7    system that lends itself to ensuring that there's a

8    fair administration of justice.  That can't be done

9    without the kind of participation that you appeared

10   to devote to this particular case.

11       And there were days when things were tedious,

12   and maybe more than a few days, but I don't think

13   that ever I saw any of you really tune out.  You

14   really seemed to make an effort to stay engaged,

15   and I think that's a real compliment and tribute to

16   you.

17       I do want to talk with you, because I think I

18   can learn a lot from you, and that's why I ask you

19   to stay around.  But I want you to view the service

20   that you rendered in a way that maybe you wouldn't

21   have thought about from the outset.  Your service

22   significantly, not just because of the duration,

23   but what we asked you to do was to ensure that both

24   sides received fair treatment in this case in a

25   very serious case.  And I think you'd be hard

1    pressed to disagree with me when I said -- or even

2    think to say that this case wasn't important to

3    both sides.  We've talked about that a lot of

4    times.  And we talked about your application of

5    common sense and experience and intelligence to

6    resolving the fact issues in this case, and you

7    became as you know, the judges of the facts.

8         But our system of justice is critical.  I mean,

9    our country has its shortcomings.  Our country is

10   challenged day in and day out.  But if you don't

11   have the opportunity to have jurors that are

12   willing to make the contributions that you made

13   over the course of this more than a month to see to

14   it that justice was served, we have a real problem

15   in this country.  And I think you've really made a

16   significant, a significant contribution for which

17   all of us are very indebted to you for making that

18   effort.

19        I want to also thank your foreman,

20   Mr. McDonell.  I don't know if he was elected to

21   the position or received it by default, which

22   sometimes happens.  But it's a serious undertaking,

23   and, I mean, obviously I don't know what took place

24   in your deliberations, because I think the

25   significance of the deliberations is kept

4270

1     confidential, because you know how you have to

2     proceed to get a matter resolved by unanimous

3     verdict.  Under any stretch in any case that's --

4     it just can't be easy, and it does take the

5     guidance of somebody that's committed.  We thank

6     you, Mr. McDonnell, for serving in that capacity.

7        We thank you on behalf, ladies and gentlemen,

8     of my staff and the attorneys and the parties and

9     if you allow me in particular, me personally, for

10    your service as jurors in this case.

11       So, keep in mind that there's an integrity to

12    the process and to the verdict.  And the law in our

13    circuit is you don't have to speak to anybody about

14    this case.  And if you are questioned about it, you

15    know, I ask you if by chance you're even tempted to

16    answer any questions, and really the lawyers and

17    everybody else knows the limits of what they can

18    ask you.  I don't think you will be asked by

19    anybody, but if you choose to answer any questions,

20    you cannot discuss your deliberations.

21       As far as any other questions or answers,

22    please remember if you answer in any respect, it's

23    a reflection on all of you.  I mean, you, I think,

24    bonded as a group.  And that requires respect, and

25    also what you do also has a bearing on future

1    juries, because they will be asked to come into a

2    case, maybe as reluctantly as you did from the

3    outset, and they will be called upon to do the kind

4    of significant service that you've been asked to

5    perform and did.  So please keep all of that in

6    mind.

7        And certainly we, again, appreciate your

8    efforts, your commitment.  You know, it's amazing

9    from my standpoint to have been on the bench for as

10   long as I have and continue to encounter juries

11   that make the commitment to see to it that our

12   country gets a little bit better through the

13   execution of the administration of justice in our

14   third branch of the government.

15       Thank you all very, very much.  You are now

16   discharged as a jury.  Chris will take you out for

17   the last time.  And those of you that can wait for

18   a few minutes, I just have to tidy up a few things

19   with the attorneys, and then after that if you

20   choose to stay around, you'll be free to go.  Thank

21   you very much.

22            (Jury excused from the courtroom.)

23            THE COURT:  Okay.  Please have a seat.

24   Okay.  The verdict has been entered, the jury was

25   polled.

4272

1          Are there any other matters that we have to

2     address from the standpoint of the defense,

3     Mr. Linsin?

4               MR. LINSIN:  Just consideration of dates,

5     your Honor, that's all I would --

6               THE COURT:  I am sorry, say that again.

7               MR. LINSIN:  Consideration of dates as to

8     sentencing and where we proceed from here.  That is

9     the only issue that I see.

10              THE COURT:  Okay.  Mr. Personius,

11    anything?

12              MR. PERSONIUS:  Your Honor, I expect we

13    will file a Rule 29 motion, and so a date for that,

14    please.  And then if you're going to set the

15    sentencing date now, of course, that.  But I think

16    the Rule 29 is the next --

17              THE COURT:  There's very strict

18    requirements on the filing of the motion, and I'll

19    ask you to be -- I mean goes without saying, that

20    you have to make certain that the time limits are

21    not violated as far as the motions are concerned.

22    And intent to file the motions does not in any way

23    affect the time periods for those motions.  So,

24    keep that in mind.  Do you have dates, Colleen?

25         Well, the Rule 29 will be first.  There's

1    nobody here from probation, right, so I don't have

2    any guidance for that.  Set out sentencing for 120

3    days.

4                    THE CLERK:  Monday July 29th at 9:00 a.m.

5                    THE COURT:  Okay.  That will be the date

6    for sentencing.  I think you'll get our sentencing

7    order, which will contain some specific information

8    that you can take into account with respect to the

9    filing -- or the preparation for sentencing

10   purposes.  It will be contained in the order.

11                   MR. PERSONIUS:  Your Honor, forgive me for

12   interrupting.  I know I'm going to be out of town

13   for four days, and it's right at the end of July.

14   I didn't bring my calendar.  I apologize for not

15   bringing it.

16                   THE COURT:  Let me set -- go ahead.

17                   MR. PERSONIUS:  All I was going to ask, is

18   there a possibility it could be later that week?

19                   THE COURT:  Sure.

20                   MR. PERSONIUS:  The 1st -- or I know by

21   the 1st I'm back.  I'm just not sure.

22                   THE COURT:  I want to give you date.  If

23   you put it over to the next --

24                   MR. MANGO:  Your Honor, actually, I'm

25   sorry.  My wife is actually expecting, so it's

1    right around that date.  If we go a little later,
2    that may cause an issue.  I don't know if maybe
3    earlier, the middle of July would work.  That
4    wouldn't be exactly 120 days, but I think I should
5    be okay in middle -- middle July.
6         THE COURT:  All right.  Here's what I want
7    to do.  I can't tell you that the sentencing will
8    actually take place on that date.  I'm going to try
9    to make it as firm as we can.  We can set it in mid
10   July.
11        MR. MANGO:  Thank you.
12        THE COURT:  We will shoot for that date.
13   Does that work from defendant Tonawanda Coke?
14        MR. LINSIN:  Well, we will attempt to make
15   it work, your Honor, yes.
16        MR. PERSONIUS:  Your Honor, I have a
17   matter scheduled with you, U.S. versus Taher, that
18   is scheduled to start in mid June, and we expect
19   will go for three or four weeks.  That would be --
20   this is obviously going to be a significant
21   sentencing, and that would be a hardship for me to
22   run that trial and have to be doing a sentencing.
23        THE COURT:  Here's what I'm going to, I'm
24   going to keep it at the middle of July.  I
25   understand that you're focusing me on potential

1    conflicts.  But that date I think I need in order

2    to get probation started, because it has a wealth

3    of work to do.  And then I will work with them to

4    see where they are in the process of getting the

5    information that's required for sentencing.  And

6    then I will reconvene everybody and we'll work

7    through the final dates.  But I need a date today

8    just to get everything triggered and get everything

9    ready.

10        For purposes of the Rule 29 motion, there's 14

11   days for that under the rule, as you know.  So, I

12   will leave that stand.  And if there is to be a

13   change in that, it has to be done by written

14   motion.  And then that may then affect the

15   flexibility that we have with respect to that time

16   period as I understand it.  Okay.  That would be

17   the written motion requirement, okay, to satisfy

18   the requirements of the 14-day period for purposes

19   of Rule 29(c)(1).

20        Okay.  So we're going to set at this point a

21   14-day period for the filing of your Rule 29

22   motion.

23             THE CLERK:  April 11th.

24             THE COURT:  April 11th.  Once I get the

25   motion, or motions however it plays out, then I'll

1  issue a text order setting the schedule, depending

2  on the request of the defendants for time, and then

3  the government's time to respond, and then we'll

4  have a reply period as well.  But I won't set that

5  now until I find out what your respective motions

6  are under Rule 29.

7           MR. LINSIN:  All right.

8           THE CLERK:  For the sentencing date --

9           THE COURT:  You've got it.  Those are the

10  two dates I need.  You gave me the date 14 days

11  out, right?

12          THE CLERK:  The sentencing date we had set

13  July 29th.  But you want a mid July date?

14          THE COURT:  A mid July date, yes.

15          THE CLERK:  July 15th.

16          THE COURT:  July 15th, yes.

17          MR. MANGO:  Yes, your Honor.

18          THE COURT:  At 9:00 a.m.

19          MR. MANGO:  Thank you.

20          THE COURT:  Okay.  All right.  I think

21  that wraps everything up from my standpoint.  I

22  don't know of anything else, but if there is I'll

23  entertain it now.  Mr. Mango?

24          MR. MANGO:  No, your Honor.  I'd ask that

25  Defendant Kamholz remain on the same conditions

1    pending sentencing.

2              THE COURT:  Yes.  I will permit that.  I

3    take it there's no objection?

4              MR. PERSONIUS:  No.  Thank you, Mr. Mango.

5    Thank you, Judge.

6              THE COURT:  Okay.  Okay.  That brings this

7    case -- this trial to a conclusion.  There's

8    corresponding things that I can say that I'm not

9    going to really get into in an elaboration.  I mean

10   you heard what I mentioned to the jury, and I think

11   their participation is very significant.  And I

12   think all I want to say really to counsel is that I

13   want to thank you for your professionalism, your

14   cooperation, the dedication that you exhibited as

15   far as your respective clients were concerned.

16       The system works at its very best when the

17   lawyers are the best and where they project into

18   their professional obligations their very best

19   efforts.  My observation is that that was done

20   here.  And frankly, you made my job as easy as one

21   could expect it to be in a case like this because

22   of your professionalism, your cooperation, your

23   assistance, your enlightened discussions,

24   everything that we worked through in this

25   particular case.  I'm not commenting on the result

1    at all.  Please don't read anything into my

2    comments.  But I think you deserve, from my

3    standpoint, a professional thank you for your

4    cooperation and assistance that made the system

5    serve as best as I think I know that it can serve.

6         And with that, you know, I expect you to make

7    all your deadlines.  We'll work with you to make

8    sure that every effort is made to make sure that

9    the final outcome in this case is the proper final

10   outcome.  Thank you very much.

11              MR. LINSIN:  Thank you, your Honor.

12              MR. PERSONIUS:  Thank you, your Honor.

13              MR. MANGO:  Thank you, your Honor.

14              *      *      *      *      *      *

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2

3            I certify that the foregoing is a

4        Correct transcription of the proceedings

5        Recorded by me in this matter.

6

7

8                         s/Michelle L. McLaughlin
                          Michelle L. McLaughlin, RPR
9                              Official Reporter
                              U.S.D.C., W.D.N.Y.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25