UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                                  **DECISION AND ORDER**
                                                          10-CR-219S (1)

TONAWANDA COKE CORPORATION and
MARK L. KAMHOLZ,

                             Defendants.

          1.        On September 9, 2014, this Court entered a Decision and Order resolving Defendant Tonawanda Coke Corporation's motion to modify the timing of its community service payments and to seal its submissions in support of its motion. (Docket No. 315.) As to the first request, this Court denied Tonawanda Coke's motion to modify the timing of its community service payments. (Docket No. 315.) Thus, this Court's previous Decision and Order requiring that Tonawanda Coke pay its community service installment payments into the Court's Registry Fund pending the outcome of Tonawanda Coke's appeal to the United States Court of Appeals for the Second Circuit remained unmodified. (Docket No. 293.) Consistent with that Decision and Order and the Judgment (Docket No. 281), Tonawanda Coke paid $3,211,971 into the Court Registry Fund on October 8, 2014, and $3,049,357 into the fund on October 7, 2015.

          2.        As to the second request, this Court granted Tonawanda Coke's motion to seal its submissions at docket numbers 302-314 pending the outcome of its appeal. (Docket No. 315.) In doing so, this Court expressed its disinclination to permit continued sealing of all of the submissions in their entirety. (Docket No. 315.) Consequently, this Court imposed a temporary seal to remain in place until 30 days after the Second Circuit's issuance of the Mandate resolving Tonawanda Coke's appeal. (Docket No. 315.)

3. On January 11, 2016, the Second Circuit denied Tonawanda Coke's appeal in its entirety. See United States v. Tonawanda Coke Corp., 636 Fed.Appx. 24 (2d Cir. 2016.) Of particular note, the Second Circuit rejected Tonawanda Coke's argument that this Court abused its discretion in imposing the special condition of probation requiring it to fund the two evaluative studies set forth in the Judgment. See id. at *29. The Second Circuit's Mandate was entered on May 4, 2016. (Docket No. 336.)

4. Presently before this Court is Tonawanda Coke's Motion for Continued Temporary Sealing of Docket Numbers 302-314, or in the alternative, to Unseal Docket Numbers 302-314 with redactions. (Docket No. 340.) The government opposes both requests and maintains that the temporary seal should be lifted in its entirety. For the following reasons, Tonawanda Coke's motion is granted.

5. It is well settled that the public has a qualified right of access to judicial proceedings and documents under both the common law and the First Amendment. United States v. Erie County, NY, 763 F.3d 235, 238-40 (2d Cir. 2014); Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006); Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 90 (2d Cir. 2004).

6. The common law right of public access to judicial documents is well established; indeed, it is said to pre-date the Constitution. Lugosch, 435 F.3d at 119; United States v. Amodeo ("Amodeo I"), 44 F.3d 141, 145 (2d Cir. 1995). "The presumption of access under the common law is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1048 (2d Cir. 1995).

7.      Whether a document is a judicial document presumed to be publicly accessible under the common law hinges on "the role of the document in the judicial process." Erie County, 763 F.3d at 239.  Thus, to determine whether a document is a judicial document, a court must consider whether the document is "relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119.  If it is, then it is a judicial document to which the common law presumption of access applies.  Erie County, 763 F.3d at 239.  The question then is what weight should be given the presumption of access, which is "governed by the role of the [document] in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Amodeo II, 71 F.3d at 1049.  The final step is to balance competing considerations against public disclosure.  See Lugosch, 435 F.3d at 120.  "Only when competing interests outweigh the presumption may access be denied." Erie County, 763 F.3d at 239 (citing Lugosch, 435 F.3d at 119-20.)

8.      As noted, the First Amendment also protects the public's right of access to judicial documents.  See, e.g., Globe Newspaper Co. v. Superior Court for Norfolk Cty., 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (holding that the First Amendment ensures "the press and general public a constitutional right of access to criminal trials"); Lugosch, 435 F.3d at 120 (finding it well settled that "the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.") (quoting Hartford Courant, 380 F.3d at 91); Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 n. 4 (2d Cir. 2004).  This right is generally understood to be stronger than the one found in the common law.  See Erie County, 763 F.3d at 239 (citing Hartford Courant, 380 F.3d at 91).

9. Whether the First Amendment right of access attaches to a document depends on whether "experience and logic" support making the document publicly available. Erie County, 763 F.3d at 239 (citing Lugosch, 435 F.3d at 120.) To make that determination, a court must consider "(a) whether the document[ ] '[has] historically been open to the press and general public' (experience) and (b) whether 'public access plays a significant positive role in the functioning of the particular process in question' (logic)." Erie County, 763 F.3d at 239 (citing Lugosch, 435 F.3d at 120 (internal quotation marks omitted).) "Once a First Amendment right of access to judicial documents is found, the documents 'may be sealed [only] if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Erie County, 763 F.3d at 239 (citing Lugosch, 435 F.3d at 120).

10. To begin, this Court finds that the documents at docket numbers 302-314 are judicial documents. They consist of motions, supporting affidavits, memoranda of law, and decisions. These documents pertain to Tonawanda Coke's economic status or contain its financial information and trade secrets. Because all of the documents are "relevant to the performance of the judicial function and useful in the judicial process," they are judicial documents. Lugosch, 435 F.3d at 119.

11. Having found that Docket Nos. 302-314 are judicial documents, the common law presumption of access attaches. Erie County, 763 F.3d at 239. The question now is what weight should be given the presumption of access. The documents at issue relate to a narrow set of motions pertaining to the timing of payment obligations publicly imposed at sentencing. While this Court's resolution of those motions may be of value to those monitoring federal courts, the underlying confidential information is of little to no value for

institutional monitoring purposes. Moreover, because the documents pertain to such a narrow issue—the timing of payments—they play a relatively minor role in the exercise of Article III power. See Amodeo II, 71 F.3d at 1049 (noting that the weight to be afforded the presumption of access is "governed by the role of the [document] in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.").

12. The diminished weight of the presumption of access in this context must now be balanced with Tonawanda Coke's competing interests against public disclosure. See Lugosch, 435 F.3d at 120. To this point, Tonawanda Coke maintains that unsealing these documents will irreparably harm its business interests, place it at a competitive disadvantage, endanger an imminent business transaction, and generally ignite concerns regarding its economic stability. It argues that revealing its detailed financial information and projected costs as set forth by its accountant and company representatives would cause it undue harm and threaten its ability to meet its fine and community service payment obligations. The same concerns hold true for the unsealing of its trade secrets: sales and production histories; cost information; and minimum and maximum operating capacities. According to Tonawanda Coke, its competitors will capitalize on this information to lure customers away, thereby threatening its economic stability. Thus, the countervailing interest to public disclosure is ensuring the satisfaction of Tonawanda Coke's sentencing obligations.

13. The government is not convinced. Although it concedes that the documents at issue contain certain sensitive financial information related to Tonawanda Coke's

business dealings, it believes that Tonawanda Coke's claims of harm and potential suffering are speculative.

14. In this Court's view, Tonawanda Coke's competing interests are compelling. When balanced against the relatively minor public interest concerning the timing of payments, the resolution of which has already been publicly disclosed, see Docket No. 315, Tonawanda Coke's business-viability concerns counsel in favor of continued temporary sealing. Accordingly, this Court finds that Tonawanda Coke's competing interests outweigh the common law presumption of access.

15. Turning to the stronger First Amendment right of access, the relevant inquiry is (1) whether the documents have historically been open to the press and general public, and (2) whether public access would significantly further the functioning of the process at issue. See Erie County, 763 F.3d at 239. Motions before the court, of course, have historically been open to the public. But specific financial information and trade secrets are routinely shielded. Particularly here, where disclosure of such sensitive information may endanger the viability of a company obligated to pay a criminal fine and fund community service projects as a condition of sentencing, continued sealing is appropriate.

16. This is particularly true because public access to this information would not significantly further any function of public concern. The timing of Tonawanda Coke's payments has already been publicly resolved, thereby providing the public the ability to monitor Tonawanda Coke's compliance with its obligations. Disclosure of specific financial information or trade secrets does nothing to further the public's understanding of Tonawanda Coke's criminal sentence or the payment process. On the other hand, public disclosure could cause irreparable damage to Tonawanda Coke's economic viability

thereby threatening its ability to comply with the sentence imposed by this Court, as detailed above.

17. Consequently, this Court finds that experience and logic counsel against public disclosure of these documents at this time. Rather, this Court finds that Tonawanda Coke's compelling interests overcome the First Amendment right of access as it pertains to this discrete set of documents.

18. Having found that another period of temporary sealing is warranted, this Court will grant Tonawanda Coke's request for an additional 1-year period of wholesale sealing of docket numbers 302-314. The duration of the temporary seal will run one year from the filing date of Tonawanda Coke's motion. The temporary seal will thus expire on July 6, 2017. Not later than 45 days before July 6, 2017, Tonawanda Coke may move for narrow redactions before public disclosure of docket numbers 302-314 is made. Requests for redaction, if any, will be heavily scrutinized.

19. The denial of Tonawanda Coke's appeal not only raises the sealing issue resolved above, it triggers the funding of the community service projects identified in the judgment. (Docket No. 281.) In particular, the University of Buffalo Study is entitled to $5,550,167 and the Soil Sample Study is entitled to $711,161. These payments, plus interest on a proportional basis, will be made out of the Court Registry Fund, which has been holding Tonawanda Coke's annual installment payments in escrow pending resolution of its appeal. Before this Court orders these payments from the Court Registry Fund, however, it will require each study to submit a Statement of Readiness to accept these funds. The statements should (1) indicate whether the study is ready to commence, (2) indicate whether the study is prepared to accept the payments, and (3) identify the

payee for the payments. Once received, these statements will be filed on the docket. Upon acceptance of the payments, each study's obligation to provide 6-month status reports to the United States Probation Officer will begin. (See Docket No. 281.)

IT HEREBY IS ORDERED, that Tonawanda Coke's Motion for Continued Temporary Sealing of Docket Numbers 302-314 (Docket No. 340) is GRANTED.

FURTHER, that the Temporary Seal on Docket Numbers 302-314 will expire on July 6, 2017, unless this Court directs otherwise.

FURTHER, that the United States Probation Office is directed to send a copy of this Decision and Order to the community service projects identified in the judgment—UB Study and Soil Sample Study.

FURTHER, that the community service projects identified in the judgment—UB Study and Soil Sample Study—shall each submit directly to this Court a Statement of Readiness, as explained herein, within 21 days of the entry date of this decision. This statement will be filed on the docket upon receipt.

SO ORDERED.

Dated:   August 9, 2016
        Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Court